**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL STALLWORTH,                                    Case No. 1:12-cv-496

        Plaintiff,                                    Barrett, J.
                                                       Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Daniel Stallworth filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled.  *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

Plaintiff applied for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in February of 2008, alleging disability due to "asthma, high blood pressure, congestive heart failure, [and] blind in left eye." (Tr. 17, 161, 164, 216).  Despite alleging disability beginning in April 27, 2004 in his 2008 applications, Plaintiff is bound by a prior disability determination resulting from prior applications.  Those 2004 applications were denied after a hearing by Administrative

Law Judge ("ALJ") Deborah Smith on November 30, 2007.  Plaintiff did not appeal that determination.  Therefore, the earliest date on which Plaintiff could establish disability on the present record is December 1, 2007, the day following the Commissioner's last determination.

After Plaintiff's 2008 applications were denied initially and upon reconsideration, he again requested a hearing *de novo* before an Administrative Law Judge  ("ALJ").  An evidentiary hearing was held in September 2010, at which Plaintiff was not represented by counsel, but instead was assisted by his fiancée as his lay representative.  At the hearing, ALJ Larry Temin heard testimony from Plaintiff, from his fiancée, and from an impartial vocational expert.  On October 28, 2010, the ALJ again denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.  (Tr. 17-26).

Although the ALJ determined that Plaintiff was insured during the relevant period, he also determined that Plaintiff had engaged in substantial gainful activity ("SGA") during the time in which he was claiming to be disabled, based upon his part-time work at the Hyatt Regency Hotel where he worked as a server assistant.  (Tr. 19).  The ALJ found that Plaintiff was working the same hours in the same capacity at the time of the hearing.  (Tr. 20).  However, the ALJ determined that there was a continuous closed period, between December 1, 2007 until April 1, 2009, during which Plaintiff had not engaged in SGA.  (*Id.*).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "a myeloproliferative disorder (polycythemia vera) and an affective disorder."  (Tr. 20).  In addition to these severe

impairments, the ALJ determined that Plaintiff had non-severe impairments involving substance abuse, and additional non-severe impairments such as asthma, peripheral vascular disease, and blindness in his left eye.  (Tr. 21).  The Plaintiff also has non-severe hypertension and GERD, and pain complaints with no known etiology.  (Tr. 22).

The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 22).  Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work, as follows:

> [T]he undersigned finds the claimant has the residual functional capacity to lift/carry, push/pull up to 20 lbs. occasionally, 10 lbs. frequently; stand and/or walk a total of six hours and sit a total of six hours in an eight-hour workday; he can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.  Mentally, he is limited to simple, routine, repetitive work that does not require contact with the general public

(Tr. 22).  The ALJ found that Plaintiff would not be able to return to his past relevant work in building maintenance repair, or as a grounds worker.  (Tr. 24).  Nevertheless, based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 24).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations.  (Tr. 25).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred:  (1) by determining the Plaintiff had engaged in SGA; (2) by

3

giving "little weight" to the opinions of Plaintiff's treating physician; and (3) by improperly assessing Plaintiff's mental and physical RFC.

In his reply memorandum, Plaintiff notes that he reapplied for benefits after losing his employment with the Hyatt Regency Hotel in the spring of 2011. His most recent application for benefits was granted, with an onset date dating to May of 2011. (Doc. 14 at 3, n.2). Therefore, Plaintiff's current appeal concerns the period of time between December 1, 2007 and the award of benefits in May 2011.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for either DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

4

whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits

5

must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

### 1.  Alleged Errors in Evaluating SGE

Plaintiff's first assertion of error concerns Step 1 of the sequential process, at which point a claimant must show that he has not engaged in substantial gainful activity. In 2009, the definition of SGA included anyone who earned more than $980 per month. In reviewing Plaintiff's earnings, the ALJ noted that his "earnings from Hyatt Corporation in the last quarter of 2008 were $2,134.93, which was below the level of substantial gainful activity."  (Tr. 19, 174).  However, in 2009, "Plaintiff was paid $2,333 in the first quarter; $2,967 in the second quarter; $3,520 in the third quarter; and $3,332 in the fourth quarter."  (Tr. 20, 171-174).

Plaintiff concedes that his work at the Hyatt Regency Hotel reached the level of SGA during the four quarters noted by the ALJ, including the last three quarters of 2009 and the first quarter of March 2010.  (Doc. 10 at 10).  On appeal, however, Plaintiff complains that the ALJ erred by failing to conduct a thorough investigation into whether Plaintiff had qualified work expenses, or whether some other exception existed that would have effectively reduced Plaintiff's earnings below SGA for at least two of the four quarters considered.  Plaintiff suggests that *if* the ALJ had conducted an additional investigation to discover any possible work expenses, then *perhaps* Plaintiff's earnings

would have fallen below the requisite SGA level.  Plaintiff further hypothesizes that *if* he succeeded in proving that his earnings should have been reduced to a level below SGA for at least two quarters, then his remaining SGA work could have been considered an unsuccessful work attempt (because it would have been for six months or less) which would have supported his disability claim.  Plaintiff admits that the ALJ "was not required to obtain information" about income related work expenses, (Doc. 14 at 2), but nevertheless contends that because he was represented by lay counsel rather than an attorney, the ALJ had a duty to further investigate and develop the record concerning this issue prior to issuing an adverse decision.

Contrary to the Plaintiff's speculative argument, the ALJ did inquire about Plaintiff's continuing SGA.  The ALJ noted that Plaintiff testified at the hearing in September 2010 that he was still working at the same hotel on the same schedule.  (Tr. 20, 32, 42-44).  Given Plaintiff's testimony and that the last data available to the ALJ – the first quarter of 2010 – also showed earnings above SGA level, it was reasonable for the ALJ to presume that Plaintiff had continuously engaged in SGA since early 2009 through the date of the hearing in September 2010.

Plaintiff's argument that the ALJ had a duty to investigate whether some hypothetical work expenses might have existed during each of the quarters that might have reduced Plaintiff's earnings to below SGA is unpersuasive.  Even though the ALJ has a duty to fully develop the record, an ALJ has no duty to explore theoretical issues as to which no issue has been presented.  In this case there was no question that Plaintiff's earnings exceeded SGA.  It was Plaintiff's burden to present evidence on this

and any related issues.[1]  Plaintiff never testified about any impairment related work expenses, never presented any evidence to suggest that such expenses existed, and made no effort to present any such evidence to the Appeals Council (or to this Court) concerning the hypothetical work expenses.  Although it is true that Plaintiff was represented at the hearing by his fiancée, in the more than two years since that time he has been represented by an experienced attorney, but still has failed to present anything other than speculative argument on this issue.  The ALJ has a duty to further investigate when the record is ambiguous – not when Plaintiff fails to present any evidence at all that would create an ambiguity.

A second related argument is even more speculative and less persuasive. Plaintiff suggests that if some evidence had been discovered to reduce Plaintiff's earnings for at least two quarters, then perhaps Plaintiff's work activity could have been viewed as an unsuccessful work attempt lasting fewer than six months.  In order to prove an unsuccessful work attempt, however, a claimant must show that his impairment forced him to stop working or to reduce the amount of work that he was performing to a level below SGA.  20 C.F.R. §§404.1574(c)(1), 416.974(c)(1).  In this case, not only were there four quarters of SGA (twice as many as permitted for an "unsuccessful" work attempt), but Plaintiff testified that he had continued to work at the same level as of the hearing date.  Thus, Plaintiff's own testimony strongly implied that

---

[1]In his reply memorandum, Plaintiff for the first time presents an additional issue concerning whether the ALJ had a duty to inquire whether Plaintiff benefited from any accommodations on the job.  Plaintiff argues that "[i]f" he had any accommodations, "then it is possible that the work he performed was not worth the amount of money he was actually paid," thereby opening the door to yet another argument that he didn't earn SGA after all.  (Doc. 14 at 2).  This argument is rejected as cursory, speculative, improperly raised in reply, and for the same reasons discussed in connection with Plaintiff's other SGA arguments.

he continued to exceed the SGA threshold well into 2010. In fact, in his reply Plaintiff concedes that he continued to work for the Hyatt Regency until he lost his position in the spring of 2011.

In short, the ALJ's determination that Plaintiff engaged in SGA after April 1, 2009 reflects no error, and is supported by substantial evidence. *See Dinkel v. Sec'y of HHS*, 910 F.2d 315, 319 (6th Cir. 1990)(claimant who had earnings above SGE threshold did not rebut presumptive SGE, where she failed to offer "truly probative evidence" in support of her contention that her work should not be considered SGE because it was akin to working in a sheltered environment).

### 2. Treating Physician Dr. Schuermann

In his second assertion of error, Plaintiff argues that the ALJ erred by giving "minimal weight" to the opinion of Plaintiff's treating physician, Dr. Jill Schuermann. Dr. Schuermann has treated Plaintiff for eight to nine years. In her September 7, 2010 letter, Dr. Schuermann opines that Plaintiff is currently, and has been disabled for at least five years. (Tr. 23, 909). Dr. Schuermann attributes the basis for disability, in part, to Plaintiff's "dizziness and disequilibrium" that Plaintiff allegedly experiences "as a side effect of the anagrelide" prescribed since 2004. She opines that this side effect "makes it unsafe for him to drive, operate machinery, or do any mechanical work," and affects his gait, and that Plaintiff also suffers from chronic diffuse pain (Tr. 909).

The opinion of a treating physician must be given "controlling weight," but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not "inconsistent with the other substantial evidence" in the record.

20 C.F.R. §404.1527(d)(2), 416.927(d)(2); *see also Jones v. Com'r of Soc. Sec.*, 335 F.3d 469, 477 (6th Cir. 2003).  If an ALJ fails to give controlling weight to the opinion of a treating physician, he must explain the weight that he is giving to the opinion, and provide "good reasons*."  See Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Unlike a medical opinion that relates to a physical limitation (such as the need for a cane), Dr. Schuermann's opinion on the ultimate issue of disability is not the type of opinion that is entitled to controlling weight, since that determination is "reserved to the Commissioner." *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§404.1527(e)(1), 416.927(e)(1).   ALJ Temin gave Dr. Schuermann's disability and other opinions "little weight," setting forth in some detail what he believed to be "good reasons" for that decision:

> It is not consistent with the fact that the claimant has been able to sustain work activity at the SGA level.  Furthermore, the limitations she suggests are not supported by the record.   She refers to dizziness and disequilibrium as side effects of anagrelide, which the claimant takes for his myeloproliferative disorder.  However, Dr. Siegrist, who had him on that medication for years, mentions nothing about such side effects.  The claimant apparently did not complain of it either.   There were no complaints of imbalance during the review of systems when Dr. Siegrist examined the claimant in January 2008…and his review of systems was negative when examined in April and June of 2008….  In September 2010, Dr. Schuermann referred the claimant to another hematologist, Dr. Hawley, who says nothing about dizziness or disequilibrium, but speculates that the claimant's "ten year duration" of lower extremity pain may be due to erythromelalgia.  Dr. Siegrist was obviously aware of such a complication; however, he stated specifically that the claimant denied any symptoms consist[ent] with erythromelalgia…in September 2007…, in October 2007…and January 2008.  The claimant's demonstrated ability to perform a job that requires him to stand for most of the day clearly diminishes the credibility of Dr. Schuermann's letter and Dr. Hawley's speculation.

(Tr. 23-24).   Plaintiff argues that the stated reasons are not supported by substantial evidence.  The undersigned disagrees.

First, Plaintiff contends that the ALJ erred in concluding that Dr. Schuermann's opinion that he was disabled was "inconsistent" with Plaintiff's "work activity at the SGA level." (See Tr. 23).  Plaintiff argues that his earnings reflect a steady decrease over time. Specifically, Plaintiff notes that the amount that his income exceeded the SGA threshold was $580 in the third quarter of 2009, down to $392 over the threshold in the fourth quarter of 2009, and a mere $184 above SGA in the first quarter of 2010.  Plaintiff asserts that given this trend, the ALJ should have assumed or inferred that by the time that Dr. Schuermann issued her opinion in September 2010, Plaintiff may not have been earning SGA.

Plaintiff's argument is wholly speculative and unsupported by the record. Plaintiff's earnings actually steadily increased between the first, second, and third quarters of 2009 before beginning to slightly decrease over the next three quarters. However, as discussed above, both the testimony Plaintiff gave at the hearing, and his admission in his reply brief that he continued working at the same hotel until Spring of 2011, undercut the inference he now seeks to draw.  Also notable is the fact that Plaintiff has presented no *evidence* to support his argument (that he ceased earning SGA) since being represented by counsel – either to the Appeals Council or to this Court. Last, Dr. Schuermann opined that Plaintiff not only was disabled as of the date of her opinion in September 2010 (at a time he testified he was working at the same level he had been), but that he had been disabled "for more than five years," at least

11

since 2005. (Tr. 909). From 2004 through December 1, 2007, Plaintiff was previously determined not to be disabled in a decision that is res judicata to this case, and from 2009 at least through early 2010, he was proven to have SGA. Clearly, the ALJ's finding that Dr. Schuermann's disability opinion is "inconsistent" with the record is supported by this substantial evidence.

Plaintiff also attacks the second reason that the ALJ provided for discounting Dr. Schuermann's opinion, concerning the alleged "side effect" of severe dizziness and disequilibrium from anagrelide, a medication that Plaintiff had taken since 2004. (Tr. 909). The ALJ noted that Plaintiff had never reported the alleged side effect to the hematologist who had prescribed that drug for many years. On appeal, Plaintiff argues that his failure ever to report that side effect to Dr. Siegrist might be explained by the possibility that Plaintiff simply did not realize that his dizziness resulted from that medication. Plaintiff notes that he did occasionally complain of dizziness to Dr. Schuermann, and that some records note his abnormal gait, especially in 2010. (Tr. 521, 525, 599, 915, 920, 993-994).

The fact that a few records can be found wherein Plaintiff complained of dizziness does not mean that the ALJ erred in rejecting Dr. Schuermann's opinion for the reasons stated. Dizziness is a fairly common symptom. Among the handful of records where dizziness was reported, several appear to relate that symptom to transient conditions unrelated to Plaintiff's anagrelide prescription. (See Tr. 915, dizziness suspected side effect of increase in Lyrica, which was then adjusted; Tr. 920, reference to unsteadiness due to suspected TIA in "last few weeks"). Dr. Schuermann's

12

opinion reads as if one of the chief reasons that she considers Plaintiff to have been disabled for "more than five years" is the severity of the alleged side effect of anagrelide.  The ALJ fairly and reasonably discounted that opinion based on the evidence.  The fact that slight contrary evidence can be found is not grounds to reverse an ALJ's decision when it is otherwise supported by substantial evidence.

Plaintiff speculates, alternatively, that perhaps he experienced dizziness and disequilibrium as a result of his myeloproliferative disease, rather than as a side effect of medication, in light of Dr. Schuermann's opinion that the disease had affected his brain. (*See* Tr. 909, Dr. Schuermann's opinion speculating that Plaintiff's myeloproliferative disease is "likely" affecting his brain, causing "confusion and poor memory" as of 8/24/10).   Once again, this argument is wholly speculative and not grounds for reversal of the ALJ's decision, because it does nothing to undercut the substantial evidence that supports the ALJ's decision.

Next, Plaintiff rails against the ALJ's discussion of Dr. Hawley's opinion.  Dr. Hawley, another hematologist to whom Dr. Schuermann referred the Plaintiff, speculated that Plaintiff's leg pain and burning might be due to erythromelalgia.  Plaintiff relies on Dr. Hawley's opinion (which finds no mention in Dr. Schuermann's September 2010 letter), as support for his contention that he has a limited ability to walk and stand. As the ALJ noted, however, Plaintiff's long-standing treating hematologist, Dr. Siegrist, "stated specifically that the claimant denied any symptoms consistent with erythromelalgia." (Tr. 24).

As with the occasional complaint of dizziness, Plaintiff notes that some medical records reflect complaints of leg pain.  Plaintiff asserts that the fact that he didn't describe his pain in a manner consistent with erythromelalgia should be viewed only as evidence that "he was not sufficiently eloquent in explaining his pain to Dr. Siegrist or that Dr. Siegrist misunderstood Plaintiff's complaints" and not as evidence that he did not suffer from erythromelalgia. However, Dr. Siegrist's opinion provides substantial evidence to support the ALJ's determination on this issue.  Dr. Siegrist treated Plaintiff for years, examining Plaintiff and making specific inquiry to rule out erythromelalgia.  Dr. Hawley, by contrast, derived his theory from just two visits, and his notes clearly indicate the speculative nature of his hypothesis.  (*See* Tr. 1426, noting that there is "a fair chance" that Plaintiff's symptoms represent erythromelalgia; Tr. 1428, noting symptoms "could possibly be consistent with erythromelalgia," and that the anagrelide that Plaintiff had been taking "theoretically would possibly ..be ineffective in treating erythromelalgia").  Therefore, it was not error for the ALJ to find Dr. Siegrist's opinion to be more credible on this issue.

Alternatively, Plaintiff hypothesizes that a different medical condition, his peripheral vascular disease with intermittent claudication, might cause leg pain.  (Tr. 909, 1063, 1083).  Not only does Plaintiff fail to cite to any significant medical support for this hypothesis, but the ALJ cited substantial evidence in the record, including objective studies and clinical evidence from 2008 through August 2010, that showed that Plaintiff's peripheral vascular disease was "mild."  (*See* Tr. 21, noting lower

14

extremity arterial studies showing a "normal" finding on the right, and only "mild" claudication on the left).

Claiming that two different conditions (either the anagrelide side effect or vascular disease) "could" result in leg pain and dizziness, Plaintiff contends that Dr. Schuermann's opinion that he is disabled[2] was supported by medical evidence. Again, the mere fact that Plaintiff can point to some possibility of a medical condition or a side effect that theoretically could account for leg pain does not refute the substantial evidence that supports the ALJ's rejection of Dr. Schuermann's opinions.

Finally, Plaintiff attacks the ALJ's reasoning that "claimant's demonstrated ability to perform a job that requires him to stand for most of the day clearly diminishes the credibility of Dr. Schuermann's letter and Dr. Hawley's speculation." (Tr. 24). Plaintiff complains that he worked only 4-5 hours per shift (Tr. 44), not "most of the day." The ALJ's phrasing does not warrant remand. Other portions of the ALJ's opinion clearly demonstrate his familiarity with Plaintiff's workload. (*See, e.g.*, Tr. 19, referencing Plaintiff's "part-time" work bussing tables and serving drinks and food). Moreover, standing for 5 hours in a shift technically does constitute "most" of an 8 hour workday.

### 3. Evaluation of Plaintiff's RFC

In his third claim, Plaintiff asserts that the ALJ erred in determining that his RFC was largely unchanged since the last RFC determination and adverse disability determination, dated November 30, 2007. In assessing Plaintiff's RFC, the ALJ noted that a "review of the medical records since that decision fails to demonstrate that these

---

[2]Dr. Schuermann's September 2010 disability opinion does not rely on, or even mention leg pain as a basis for disability, although she does briefly refer to "chronic diffuse" pain.

[non-severe] impairments [asthma, peripheral vascular disease, and blindness in his left eye] have significantly worsened or reduced his residual functional capacity."  (Tr. 21). The ALJ further noted that Plaintiff suffers from "hypertension and GERD, which were not addressed in the prior decision," but neither of which appeared to affect Plaintiff's ability to work.  (Tr.22).

With respect to the prior RFC determination, the ALJ acknowledged that consulting physician Dr. Morton indicated that the RFC was not binding due to new evidence, including pulmonary function studies, but nevertheless "found precisely the same exertional capacity" with just one additional limitation - that Plaintiff could only occasionally climb ladders, ropes and scaffolds.  "He imposed no environmental restrictions whatsoever." (Tr. 23).

Plaintiff argues that the ALJ's determination that Plaintiff's RFC had not significantly changed was "simply ridiculous" in light of additional medical evidence since November 2007.  (Doc. 10 at 17).  Contrary to Plaintiff's argument, neither a new diagnosis nor a worsening of an existing condition necessarily translate to a different RFC, absent evidence that the diagnosis or condition requires new limitations.

To that end, Plaintiff asserts that the ALJ should have added limitations to account for Plaintiff's "pulmonary impairments" and that the ALJ should have included a sit/stand option.  However, as Defendant points out, no physician has offered any opinions suggesting that Plaintiff requires environmental limitations or that he needs to alternate between sitting and standing.  Plaintiff contends that the sit/stand option should have been offered for "comfort" even if no physician recommended it, because

16

he testified and complained to his physicians about leg pain.  Plaintiff refers again to the previously discussed records, in which he complained of dizziness or unsteadiness on his feet.

For the reasons discussed, substantial evidence supported the ALJ's decision not to mandate a sit/stand option, including Plaintiff's demonstrated ability to engage in SGA, objective and clinical records, and other factors affecting Plaintiff's credibility. Likewise, substantial evidence supports the ALJ's decision not to impose additional environmental restrictions.  As the ALJ pointed out, Plaintiff's July 2008 pulmonary function studies showed only a "mild" defect, and he continues to smoke.  (Tr. 21). Plaintiff argues that the fact that he continued to smoke despite being advised to quit should not be held against him, but a failure to comply with treatment is permissible for an ALJ to consider.  *See* 20 C.F.R. §404.1530(b); 416.930(b).

Plaintiff further argues that the RFC fails to adequately account for his problems "in getting along with others and with sustaining attention and concentration, or with his memory problems and confusion."  (Doc. 10 at 17-18).  The ALJ reviewed the evidence of Plaintiff's mental impairment, stating that when he presented for treatment to CCHB for depression in August 2009, "he was already working [their report says 'full-time']" and he "did not seem too interested in therapy." According to the clinical notes, he was "'more interested in receiving case management and SSDI.'"  (Tr. 23).  Other records reported his progress as "'stable throughout.'"  (*Id.*).  Therefore, the ALJ found "no indication that the claimant's depression has worsened since the prior decision."  (Tr. 23).  Having reviewed the same evidence, the undersigned finds substantial evidence to

17

support the ALJ's decision to limit Plaintiff to "simple, routine, repetitive work that does not require contact with the general public," (Tr. 22), without imposing any additional mental limitations.

Last, citing district court cases from Alabama and Iowa, Plaintiff complains that the ALJ should have found him to be disabled based on his complaints of pain alone. He does not directly attack the ALJ's adverse credibility assessment, but implicitly does so when he argues that "[e]ven if the ALJ was correct that Plaintiff was not disabled for the entire period of alleged disability, the ALJ erred by failing to consider whether Plaintiff was disabled for even just a portion of the time in question."  (Doc. 10 at 20).

As other Sixth Circuit cases have stated, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)).  In nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability.  *See Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Com'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).  In addition to Plaintiff's reported daily activities in this case, the ALJ carefully considered the clinical records and objective evidence, all of which failed to support Plaintiff's allegations of disabling pain.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.  In this case the ALJ considered the record as a whole, including but not limited to objective and clinical records, Plaintiff's testimony, and reported daily activities, in assessing Plaintiff's subjective reports of incapacitating pain. The ALJ's determination of credibility is within the "zone of choice" because it is supported by substantial evidence.  Because substantial evidence supports the functional limitations found by the ALJ, his failure to include any additional RFC limitations based upon Plaintiff's complaints of disabling pain does not constitute reversible error. *See also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III. Conclusion and Recommendation

Therefore, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB be **AFFIRMED,** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

                                        _/s Stephanie K. Bowman_
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL STALLWORTH,                                      Case No. 1:12-cv-496

        Plaintiff,                                           Barrett, J.
                                                        Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).